TAX DEFERRED ANNUITIES CORPORATION, APPELLANT, *v.* CLEVELAND BOARD OF EDUCATION, APPELLEE.

(No. 49093 — Decided
May 20, 1985.)

A.P. Leary, for appellant.
James G. Wyman, for appellee.

ANN MCMANAMON, J. Tax Deferred Annuities Corporation ("TDA"), the plaintiff-appellant, provided a tax-sheltered annuities program to employees of the Cleveland Board of Education ("the Board"), the defendant-appellee. On March 7, 1983, TDA filed a complaint alleging that the Board exceeded its statutory authority in imposing two processing fees upon TDA as well as a sixty-day waiting period before Board employees might switch insurance companies.[1]

TDA requested declaratory relief and a refund of a $4,500 processing fee it had paid the Board. Both parties sought summary judgment which was granted in favor of the Board. It is from this order which TDA timely appeals, raising one assignment of error.[2]

It is undisputed that the Board procured tax-sheltered annuities for its employees pursuant to R.C. 9.90 and that certain employees designated TDA for the purchase of such a program pursuant to R.C. 9.91.[3] In compliance with a Board resolution, TDA paid appellee a

---

[1] TDA voluntarily dismissed claims concerning an alleged civil rights violation and a salary modification agreement.

[2] Plaintiff-appellant alleges: "The trial court erred in granting defendant's cross-motion for summary judgment."

[3] R.C. 9.91 provides:
"If the governing board of a public institution of higher education or the board of education of a school district procures a tax-sheltered annuity for an employee, pursuant to section 9.90 of the Revised Code, that meets the requirements of section 403(b) of the Internal Revenue Code of 1954, 26

U.S.C. 403(b), the employee has the right to designate the licensed agent, broker, or company through whom the board shall arrange for the placement or purchase of the tax-shelter annuity. In any case in which the employee has designated such an agent, broker, or company, the board shall comply with the designation, provided that the board may impose either or both of the following as conditions to complying with any such designations:

"(A) The designee must execute a reasonable agreement protecting the institution or district from any liability attendant to procuring the annuity;

$4,500 processing fee for computer services to run a salary withholding program for premium payments.

Whether or not TDA also remitted a Board-required $1.00 per month per name processing fee for monthly administrative costs is not clear from the record before us, but appellant stated at oral hearing that TDA had not paid this fee. A Board resolution also required participants to provide sixty days' notice for filing and bookkeeping changes in the event a teacher wished to select some other annuity program.

TDA disputes the Board's authority to levy administrative costs and/or to set such a waiting period.

Boards of education are creatures of statute and, as such, have only those powers which are expressly granted by statute or necessarily implied therefrom. *Schwing* v. *McClure* (1929), 120 Ohio St. 335.

R.C. 9.90 specifically authorizes a board of education to contract for, purchase or otherwise procure for or on behalf of its employees various types of insurance, including annuities. This section provides in pertinent part:

"(A) The governing board of any public institution of higher education, including * * * the board of education of any school district, may, in addition to all other powers provided in the Revised Code:

"(1) Contract for, purchase, or otherwise procure from an insurer or insurers licensed to do business by the state of Ohio for or on behalf of such of its employees as it may determine, life insurance, or sickness, accident, annuity, endowment, health, medical, hospital, dental, or surgical coverage and benefits, or any combination thereof, by means of insurance plans or other types of coverage, family, group or otherwise, and may pay from funds under its control and available for such purpose all or any portion of the cost, premium, or charge therefor;

"* * *

"(B) All or any portion of the cost, premium, or charge therefor may be paid in such other manner or combination of manners as the governing board or the school board may determine, including direct payment by the employee in cases under division (A)(1) of this section, and, if authorized in writing by the employee in cases under division (A)(1) or (2) of this section, by such governing board or school board with moneys made available by deduction from or reduction in salary or wages or by the foregoing of a salary or wage increase. * * *"

In construing R.C. 9.90, we deem the processing of claims and the performance of other administrative services to be essential to the provision of insurance coverage. Without these services such a program could not operate. We therefore hold that the Board's authority to provide for administrative services in connection with an insurance plan may be fairly implied from its express statutory authority to procure insurance.[4]

TDA initially argues that the term "cost" in R.C. 9.90(B) is limited to the amounts payable for *coverage* and *benefits*, and that neither the processing fees nor the sixty-day waiting period constitute a "cost, premium or charge" within the meaning of the statute.

We interpret the word "cost" to include expenses incurred in purchasing the insurance program, as well as the

---

"(B) The designee must be designated by a number of employees equal to at least one per cent of the board's full-time employees or at least five employees, whichever is greater, except that the board may not require that the agent, broker, or company be designated by more than fifty employees."

[4] Accord 1984 Ohio Atty. Gen. Ops. No. 84-030 and 1981 Ohio Atty. Gen. Ops. No. 81-045.

administrative costs necessary to operate it. While we agree that the sixty-day waiting period is not a "cost," we find it to be a service provided for the administrative ease of the Board. As we have noted, the provision of administrative services is incidental to the procurement of the policy.

TDA further contends that R.C. 9.90(B) seeks to facilitate the availability of insurance programs by providing payment alternatives for Board employees. It is TDA's position that this section bars the Board from charging TDA for costs.

R.C. 9.90(B) clearly provides that the cost, premium or charge for an insurance program may be paid by the Board itself, or by its employees with a direct payment, salary deduction or reduction, or *in such other manner or combination of manners as the * * * school board may determine"* (emphasis added). We construe this language to grant the Board full discretion in determining how the costs of annuity plans are to be met. We also note that the various statutory payment methods are preceded by the word "including," and that they are therefore not limited exclusively to those methods listed.

TDA also argues that R.C. 9.91 is specific and unambiguous with respect to the conditions which the Board may impose upon a company designated to provide the annuities program. TDA posits that the Board may impose only the two conditions provided in R.C. 9.91(A) and (B). Again, we disagree.

R.C. 9.91 permits Board employees to designate the company which will provide the annuity plan. Once an employee makes this designation, R.C. 9.91(A) expressly allows the Board to execute a "hold harmless" clause against the company. R.C. 9.91(B) requires the Board to comply with an employee designation when the same designee is selected by a stated minimum number of employees.

R.C. 9.91 cannot be read to limit the Board's authority pursuant to R.C. 9.90 to provide for the administration of an annuity program. We hold that the provisions of R.C. 9.91 must be construed as concurrent with, and in addition to, those granted in R.C. 9.90.

TDA suggests, in its appellate brief, that, in the event we reach the conclusion which we have stated, that we reverse and remand this matter for a hearing on the reasonableness and necessity of the processing fees and waiting periods imposed by the Board. We note that appellant has stated that "[t]he issue at bar is not whether * * * [the Board] abused its discretion [in imposing charges and conditions] but whether it had any discretion to exercise." The appellant did not raise the reasonableness issue below and, pursuant to *State* v. *Williams* (1977), 51 Ohio St. 2d 112 [5 O.O.3d 98], we will not presently address it.

We find that the Board was acting within its statutory authority in requiring the processing fees and the sixty-day pre-cancellation period.

There exists no genuine issue of material fact which would preclude the trial court from granting the Board's cross-motion for summary judgment.

The appellant's assignment of error is not well-taken.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

PARRINO, P.J., and MARKUS, J., concur.